UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| MATTHEW BURNETT, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) | No. 4:13-CV-1990-JAR |
|  | ) |  |
| AYKAN ACIKGOZ, | ) |  |
|  | ) |  |
| Defendant. | ) |  |

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendant Aykan Acikgoz's Motion for Summary Judgment. (Doc. No. 17) The motion is fully briefed and ready for disposition.[1] For the following reasons the motion will be granted.

**Background**

Plaintiff Matthew Burnett, a Missouri inmate, is confined in the St. Charles County Adult Correctional Facility ("Jail"). On October 4, 2013, Plaintiff filed this action under 42 U.S.C. § 1983, seeking damages against the Jail and Defendant Correctional Officer Aykan Acikgoz ("Defendant"). (Complaint ("Compl."), Doc. No. 1) On March 20, 2014, the Court dismissed all of Plaintiff's claims with the exception of his Fourteenth Amendment claim of deliberate indifference in failing to intervene and/or protect Plaintiff from an assault by other inmates. (Doc. No. 9) Defendant contends he is entitled to summary judgment because Plaintiff is unable to present sufficient facts or evidence to establish a cause of action and because there is no

---

[1] On April 29, 2015, after a review of the record indicated that Plaintiff had not filed a response to Defendant's motion, the Court granted Plaintiff until May 29, 2015, to respond to Defendant's motion. (Doc. No. 22) On May 13, 2015, Plaintiff submitted a memorandum in opposition to Defendant's motion. (Doc. No. 23) Defendant filed his reply on May 19, 2015. (Doc. No. 24)

genuine issue as to any material fact. (Doc. No. 19) In response, Plaintiff asserts that Defendant withheld all evidence to support his claim. He references a video recording which he contends would have proven Defendant failed to intervene or end the assault in a proper and procedural manner. (Doc. No. 23) Defendant replies that Plaintiff has not properly responded to his motion and that his claim of "withheld evidence" is disingenuous because Plaintiff conducted no discovery in this matter. (Doc. No. 24)

**Legal standard**

Summary judgment is appropriate when no genuine issue of material fact exists in the case and the movant is entitled to judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The initial burden is placed on the moving party. City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc., 838 F.2d 268, 273 (8th Cir. 1988). If the record demonstrates that no genuine issue of fact is in dispute, the burden then shifts to the non-moving party, who must set forth affirmative evidence and specific facts showing a genuine dispute on that issue. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

Plaintiff's pro se status does not excuse him from responding to Defendant's motion with specific factual support for his claims to avoid summary judgment, Beck v. Skon, 253 F.3d 330, 333 (8th Cir. 2001), or from complying with local rules, see Schooley v. Kennedy, 712 F.2d 372, 373 (8th Cir. 1983). See also Carman v. Treat, 7 F.3d 1379, 1381 (8th Cir.1993) (failing to allow pro se prisoner to disregard Federal Rules of Civil Procedure). See Fed.R.Civ.P. 56(e) ("[An] adverse party may not rest upon the mere allegations or denials of ... [his] pleading, but ... [must], by affidavits or as otherwise provided in this rule, ... set forth specific facts showing that there is a genuine issue for trial."); Anderson, 477 U.S. at 249-52 (explaining that nonmovant

must offer controverting affidavits or evidence from which a reasonable jury could return a verdict in his favor).

In determining whether summary judgment is appropriate in a particular case, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in his favor. Benford v. Correctional Medical Services, 2012 WL 3871948, at *4 (E.D.Mo. Sept. 6, 2012) (citing Celotex Corp., 477 U.S. at 331). The Court's function is not to weigh the evidence but to determine whether there is a genuine issue for trial. Id. (citing Anderson, 477 U.S. at 249). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." Id. (quoting Torgerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir. 2011)).

**Facts**[2]

---

[2] The facts are taken from Defendant's Statement of Uncontroverted Material Facts ("DSOF"), Doc. No. 18. Plaintiff did not respond to Defendant's Statement of Uncontroverted Material Facts. Local Rule 4.01(E) provides with respect to summary judgment motions:

> A memorandum in support of a motion for summary judgment shall have attached a statement of uncontroverted material facts, set forth in a separately numbered paragraph for each fact, indicating whether each fact is established by the record, and, if so, the appropriate citations. Every memorandum in opposition shall include a statement of material facts as to which the party contends a genuine dispute exists. Those matters in dispute shall be set forth with specific references to portions of the record, where available, upon which the opposing party relies. The opposing party also shall note for all disputed facts the paragraph number from movant's listing of facts. All matters set forth in the statement of the movant shall be deemed admitted for purposes of summary judgment unless specifically controverted by the opposing party.

E.D. Mo. L.R. 4.01(E). As a result of Plaintiff's failure to submit any response, Plaintiff has not met the requirements of Local Rule 4.01(E), and is deemed to have admitted all facts in Defendant's Statement of Uncontroverted Facts. Turner v. Shinseki, 2010 WL 2555114, at *2 (E.D.Mo. June 22, 2010) (citing Deichmann v. Boeing Co., 36 F.Supp.2d 1166, 1168 (E.D.Mo.1999), aff'd, 232 F.3d 907 (8th Cir.2000), cert. denied, 531 U.S. 877, 121 S.Ct. 184, 148 L.Ed.2d 127)). However, Plaintiff's failure to respond properly to the motion for summary judgment does not mean summary judgment should be automatically granted in favor of Defendant. Even if the facts as alleged by Defendant are not in dispute, those facts still must establish he is entitled to judgment as a matter of law. Autry Morlan Chevrolet Cadillac, Inc. v. RJF Agencies, Inc., 332 S.W.3d 184, 191 (Mo.Ct.App. 2010) (citations omitted). See also Vandergrift v. Emerson, 2012 WL 15021, at *1 (W.D. Mo. Jan. 4, 2012).

On July 23, 2013, at approximately 12:48 p.m., Plaintiff was in housing unit F of the Jail. Defendant was on duty at this time, posted in the housing unit control room. Shortly after 12:48 p.m., Defendant ordered all inmates in the housing unit to return to their cells so they could be locked in their individual cells, a process known as "racking-down." When several inmates refused to rack-down, Defendant repeated his order, turned off the television in the housing unit, and began to flash the lights. Several inmates continued to refuse to rack-down. At this time, Plaintiff and inmates Robert Williams, David Ewing and Byron Mischeaux became involved in a verbal altercation, which then escalated to a physical altercation. Upon observing the altercation, Defendant called central control to report the altercation to a supervisor and request assistance. This report was made at 12:50 p.m. Assistance arrived at the housing unit within fifteen to thirty seconds after the call went out and the fight ended. The entire altercation from the order to rack-down to the end of the fight lasted less than two minutes.

**Discussion**

The Eighth Amendment requires prison officials "to protect prisoners from violence at the hands of other prisoners." Farmer v. Brennan, 511 U.S. 825, 833 (1994) (internal quotation omitted). Although the Eighth Amendment applies directly only to convicted prisoners, the Fourteenth Amendment provides civilly committed individuals and other detainees "at least the same level of constitutional protection as the Eighth Amendment." Nelson v. Shuffman, 603 F.3d 439, 446 n. 3 (8th Cir.2010) (considering failure-to-protect claims brought by a detainee living in a sex offender treatment center under the standards applicable to prisoners' failure-to-protect claims); see also Youngberg v. Romeo, 457 U.S. 307, 315–16 (1982).

Not every prisoner-inflicted injury amounts to a constitutional violation. Farmer, 511 U.S. at 834. To establish a failure-to-protect claim under the Eighth or Fourteenth Amendments,

a prisoner or detainee must demonstrate that the defendant officer was "deliberately indifferent to a 'substantial risk of serious harm.' " Young v. Selk, 508 F.3d 868, 872 (8th Cir.2007) (quoting Farmer, 511 U.S. at 828). See also Nelson, 603 F.3d at 446. This requires a plaintiff to make a two-part showing. First, the plaintiff must show that, "viewed objectively, the deprivation of rights was sufficiently serious," which requires establishing that " 'the official's failure to protect resulted in the inmate being incarcerated under conditions posing a substantial risk of serious harm.' " Nelson, 603 F.3d at 446 (quoting Young, 508 F.3d at 872). Second, the plaintiff must show the defendant official was "deliberately indifferent" - that is, that [he] "actually kn[ew] of the substantial risk and fail[ed] to respond reasonably to it." Nelson, 603 F.3d at 446 (quotation marks omitted). Merely negligent conduct is insufficient. Farmer, 511 U.S. at 835.

**Substantial risk of serious harm**

Defendant argues there is insufficient evidence in the record to establish Plaintiff was subject to an objective, substantial risk of serious harm. (Doc. No. 19 at 6-7) In determining whether an inmate faced a substantial risk of serious harm under Farmer, "the assailant's conduct can provide the court 'the most probative evidence of the degree and type of risk that [the inmate] faced.' " Walton v. Dawson, 752 F.3d 1109, 1127 (8th Cir. 2014) (quoting Nelson, 603 F.3d at 447 (8th Cir.2010) (alteration in original).

There is no evidence in the record demonstrating that inmates Williams, Ewing and Mischeaux were known to be dangerous; a review of their inmate records show no reports of violence or assaults directed toward Plaintiff prior to the July 23, 2013 altercation. (DSOF at ¶¶ 25-27) In fact, there are no reports of violence or assaults in any of these inmates' files prior to

July 23, 2013. (Id.) Therefore, there is nothing to suggest inmates Williams, Ewing and Mischeaux posed a substantial risk to any inmate housed at the Jail prior to July 23, 2013.

Plaintiff's deposition testimony further establishes the absence of a risk of harm. Plaintiff testified he had no reason to believe he was in any danger from any inmate at the Jail. (Id. at ¶¶ 24, 30-31) It was also Plaintiff's testimony that prior to July 23, 2013, he had never associated with or even talked to the inmates who attacked him. (Id. at ¶ 39) He stated he had no reason to believe he was going to be attacked by Williams, Ewing and Mischeaux and that the attack had taken him by surprise. (Id. at ¶¶ 40-41) "A single episode of violence, without warning or suspicion, is insufficient to establish a pervasive risk of harm, particularly when the injured inmate views the attack as an isolated incident." Falls v. Nesbitt, 966 F.2d 375, 379 (8th Cir. 1992). See also Smith, 910 F.2d at 502.

Because the evidence does not support a finding that there is a genuine issue of material fact as to whether Plaintiff objectively faced a substantial risk of harm at the time of the July 23, 2013 assault, the Court need not address whether Defendant subjectively acted, or failed to act, with deliberate indifference to Plaintiff's safety. See Berry v. Sherman, 365 F.3d 631, 635 (8th Cir. 2004). Even so, there is insufficient evidence of record to establish that Defendant was deliberately indifferent to a substantial risk of serious harm to Plaintiff.

**Deliberate indifference**

An official is deliberately indifferent if he or she actually knows of the substantial risk and fails to respond reasonably to it." Nelson, 603 F.3d at 447 (citing Farmer, 511 U.S. at 844-45). The standard requires a "culpable state of mind … more blameworthy than negligence." Farmer, 511 U.S. at 834-35 (citation omitted). To be deliberately indifferent, "the official must be aware of facts from which the inference could be drawn that substantial risk of serious harm

exists, and he must also draw the inference." Id. at 837. Whether a prison official knew of the substantial risk can be proven through circumstantial evidence showing, for example, that the "substantial risk of inmate attacks was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus 'must have known' about it." Id. at 842 (quotation marks omitted). Direct evidence of actual knowledge is not required. Id. at 842-43.

There is no record evidence suggesting Defendant was aware that inmates Williams, Ewing and Mischeaux posed a substantial risk of serious harm to Plaintiff. Plaintiff had no reason to believe he might be in danger (DSOF at ¶ 31), and therefore, no reason to alert Jail personnel of such a risk. Cf. Young, 508 F.3d at 872-73 (The court noted the fact that plaintiff had reported a threat and repeated it the next day strengthened the inference of substantial risk of server harm to plaintiff.). Plaintiff testified he had had no prior altercations with any other inmates and had not been threatened by any inmates prior to the July 23, 2013 assault. (DSOF at ¶¶ 28-29, 33-34) Prior to July 23, 2013, Plaintiff had never feared for his safety while housed at the Jail (id. at ¶ 30), and never requested to be moved from one housing unit to another for his own protection. (Id. at ¶ 32) In addition, Plaintiff's inmate file shows no inmate/detainee concern forms related to any belief that he might be in danger or require protective custody prior to July 23, 2013. (Id. at ¶ 35) Plaintiff testified he was aware of the Jail's complaint system and had in fact filed a concern form pertaining to an issue unrelated to this litigation with the Jail on June 1, 2013. (Id. at ¶ 36) It was not until August 26, 2014, that Plaintiff filed an inmate/detainee concern form requesting to be moved to administrative segregation for his safety. (Id. at ¶ 37)

These undisputed facts establish Defendant had no prior notice of substantial risk of serious harm to Plaintiff.

In his complaint Plaintiff alleges "I expected [Defendant] to do something before anything happened. But [Defendant] just stood there watching with a smile on his face." (Doc. No. 1 at 6). A prison official acts with deliberate indifference to an inmate's safety when the official is present at the time of an assault and fails to intervene or otherwise act to end the assault, see Williams v. Mueller, 13 F.3d 1214, 1216 (8th Cir. 1994), unless the failure to respond was justifiable. See, e.g., Williams v. Willits, 853 F.2d 586, 591 (8th Cir. 1988) (involving a prison guard who believed that attempting to break up fight between two inmates would place himself and others in danger and thus did not violate the plaintiff's Eighth Amendment rights); Arnold v. Jones, 891 F.2d 1370, 1372 (8th Cir. 1989)). Even where a guard is not in a position to safely break up a fight, the guard would, nevertheless, have a duty to summon help. See Holloway v. Wittry, 842 F.Supp. 1193, 1200 (S.D. Iowa 1994).

In this case, the Department of Corrections has implemented policy and procedure in the event of disturbance, disorder, or riot in the Jail. The Disturbance/Disorder/Riot Plan classifies a small group of inmates fighting as disorder. During an incident of disorder, all Jail personnel have clearly defined roles and responsibilities. The primary duties of the on-scene staff member, in this case Defendant, are to report the disorder to the Shift Supervisor and not physically attempt to control these situations alone. After being notified, the Shift Supervisor immediately responds to the area of disorder and ensures sufficient backup is present to bring an end to the disorder. Only once sufficient backup is present on the scene of disorder, may officers attempt to control the area and end the disorder. It is the responding backup's responsibility to control the disorder, not the on-scene staff. (DSOF at ¶¶ 17-22; Doc. No. 18-2) Thus, Defendant's primary

responsibility during the July 23, 2013, altercation was to notify the Shift Supervisor of the fight. It is undisputed that Defendant did in fact intervene, or otherwise act to end the assault once the fight started by following established procedure and calling for assistance. Although he was unsure of the exact timing, Plaintiff admitted during his deposition that Defendant called for assistance once the altercation had commenced. (Burnett Deposition, Doc. No. 18-5 at 75:1-18)

In sum, Defendant is entitled to summary judgment because the record does not support an inference that Plaintiff was under a substantial risk of harm at the time he was attacked or raise a factual question suggesting Defendant knew of such a risk and deliberately disregarded it.

**Qualified immunity**

Defendant further argues he is entitled to qualified immunity. (Doc. No. 19 at 12-13) Qualified immunity shields government officials from suit in performance of discretionary functions. Berry, 365 F.3d at 633. On summary judgment, a defendant official is entitled to qualified immunity so long as his "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Irving v. Dormire, 519 F.3d 441, 446 (8th Cir. 2008) (quoting Reece v. Groose, 60 F.3d 487, 491 (8th Cir.1995) (internal quotation omitted). See also Walton v. Dawson, 752 F.3d 1109, 1116 (8th Cir. 2014).

The Supreme Court has made it clear the Eighth Amendment encompasses an inmate's right to be protected from harm by fellow inmates. See Farmer, 511 U.S. at 833. Prison officials violate this right, however, only when they exhibit a "deliberate or callous indifference to an inmate's safety." Prosser v. Ross, 70 F.3d 1005, 1007 (8th Cir. 1995) (quoting Davidson v. Cannon, 474 U.S. 344, 347 (1986); Andrews v. Siegel, 929 F.2d 1326, 1330 (8th Cir.1991) (holding prison official must have acted with "reckless disregard" for the inmate's safety)). In this case, as discussed above, the summary judgment record fails to support Plaintiff's claim that

Defendant violated that right. Defendant is, therefore, entitled to summary judgment on qualified immunity grounds. See Curry v. Crist, 226 F.3d 974 (8th Cir. 2000).

**Exhaustion of administrative remedies**

Lastly, Defendant argues Plaintiff failed to exhaust his administrative remedies pursuant to the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a). (Doc. No. 19 at 14) The PLRA requires "proper exhaustion," i.e., the prisoner's grievance must be in compliance with the agency's deadlines and other procedural rules. Woodford v. Ngo, 548 U.S. 81, 91 (2006).

The evidence of record demonstrates Plaintiff was aware of the St. Charles County DOC's grievance procedure but never completed and submitted an Inmate/Detainee Concern Form related to the July 23, 2013 altercation to the Jail administration. (DSOF at ¶¶ 42-45) Because he failed to make use of the DOC grievance proceedings, Plaintiff has not exhausted all "available" remedies and his claim fails as a matter of law.

**Conclusion**

For these reasons, Defendant's motion for summary judgment will be granted and Plaintiff's complaint dismissed.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Aykan Acikgoz's Motion for Summary Judgment on Plaintiff's Prisoner Civil Rights Complaint Under 42 U.S.C. § 1983 [17] is **GRANTED.**

A separate Judgment will accompany this Memorandum and Order.

_/s/ John A. Ross_
**JOHN A. ROSS**
**UNITED STATES DISTRICT JUDGE**

Dated this 30th day of July, 2015.